1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DINO B. DURSO,                          No.  2:16-cv-2290 DB

12                  Plaintiff,

13          v.                               ORDER

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,
15

16                  Defendant.

17

18          This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1]

20   Plaintiff's motion argues that the Administrative Law Judge committed numerous errors in

21   finding that plaintiff was not disabled.  For the reasons explained below, plaintiff's motion is

22   granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and

23   the matter is remanded for the payment of benefits.

24                          PROCEDURAL BACKGROUND

25          In September of 2012, plaintiff filed an application for Disability Insurance Benefits

26   ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on

27   ────────────────────

28   [1]  Both parties have previously consented to Magistrate Judge jurisdiction over this action
     pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 8 & 11.)

                                                1

December 3, 2011. (Transcript ("Tr.") at 14, 191-92.) Plaintiff's application was denied initially, (id. at 116-21), and upon reconsideration. (Id. at 123-28.) Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on November 21, 2014. (Id. at 34-80.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 34-35.)

In a decision issued on March 19, 2015, the ALJ found that plaintiff was not disabled. (Id. at 29.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since December 3, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative joint disease of the bilateral knees, degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, obesity and mood disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations. He requires the freedom to use a cane as he walks. He is able to lift and carry up to 10 pounds using his free hand as he uses the cane in the other. The claimant is able to stoop and/or crouch occasionally. The claimant is unable to climb, kneel or crawl for any significant part of job (sic). He can perform those movements and functions about once per hour. The claimant is unable to operate foot controls. The claimant must avoid all exposure to work hazards, such as unprotected heights or moving machinery. The claimant requires a walking surface that is generally even and/or free of any irregularities, such as indoor office work. The claimant is able to perform simple, routine and repetitive work. He is able to perform work that does not require the use of independent judgment on the job. He is able to respond to routine changes in the work environment.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on March 29, 1966 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 3, 2011, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 16-29.)

On August 1, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's March 19, 2015 decision. (Id. at 1-4.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 26, 2016. (ECF. No. 1.)

LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step

process has been summarized as follows:

>Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
>Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
>Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
>Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>
>Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

APPLICATION

Plaintiff's pending motion argues that the ALJ committed the following five principal errors:  (1) the ALJ erred at step three of the sequential evaluation; (2) the ALJ's treatment of the medical opinion evidence constituted error;  (3) the ALJ's treatment of the subjective testimony constituted error; (4) the ALJ's residual functional capacity determination was not based on substantial evidence; and (5) the ALJ's hypothetical question to the Vocational Expert was incomplete.  (Pl.'s MSJ (ECF No. 18) at 12-35.[2])

I.   Step Three

At step three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings.

---

[2]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs."  Lester, 81 F.3d at 828.  The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary."  Sullivan v. Zebley, 493 U.S. 521, 532 (1990); see also Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  If a claimant shows that his impairments meet or equal a Listing, he will be found presumptively disabled.  20 C.F.R. §§ 404.1525-404.1526, 416.925-416.926.

The claimant bears the burden of establishing a prima facie case of disability under the Listings.  See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002).  To "meet" a listed impairment, the claimant must establish that his condition satisfies each element of the listed impairment.  See Zebley, 493 U.S. at 530; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the listed impairment.  Id.

Here, plaintiff argues that the ALJ erred by finding that plaintiff did not meet Listing 1.02 for Major Dysfunction of a Joint.  (Pl.'s MSJ (ECF No. 18) at 13.)  Listing 1.02 provided:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

APPENDIX 1 TO SUBPART P OF PART 404—LISTING OF IMPAIRMENTS, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Jan. 2, 2015).

With respect to the inability to ambulate effectively, Listing 1.00(B)(2)(b)(2) provided the following definition:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

(Id.)

The ALJ's decision with respect to Listing 1.02 states simply:

> Although the claimant has "severe" physical and mental impairments, objective findings and functional limitations do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1; listing sections 1.02, 1.04, 12.04). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments. Specifically, the record does not show evidence of major dysfunction of a joint(s) (due to any cause) characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint, resulting the (sic) inability to ambulate effectively and/or perform fine or gross movements per 1.02.

(Tr. at 16-17.)

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis, 236 F.3d at 512 (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("We hold that, in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ

must explain adequately his evaluation of alternative tests and the combined effects of the impairments.")).  Moreover, an "ALJ must provide a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." Diaz v. Commissioner of Social Sec., 577 F.3d 500, 504 (3rd Cir. 2009) (quotation omitted).

Here, the ALJ did not adequately explain his finding that plaintiff's impairments did not meet or equal Listing 1.02.  See Laborin v. Berryhill, 692 Fed.Appx. 959, 962 (9th Cir. 2017) ("Here, other than stating general conclusions about the medical record, citing a few specific points in the course of the credibility determination, and summarizing the functional assessments—but not the medical findings—of the physicians, the ALJ did not adequately discuss the medical record."); Mixon v. Commissioner of Social Security Administration, No. CV-16-2712 PHX DLR, 2017 WL 4296665, at *4 (D. Ariz. Sept. 28, 2017) ("Although ALJs are not required to state why a claimant failed to satisfy every different section of the listing of impairments the ALJ must discuss and evaluate the evidence that supports his conclusion."); Stratton v. Astrue, 987 F.Supp.2d 135, 144 (D. N.H. 2012) ("At step three of the sequential process, the ALJ is generally required to elaborate as to which disability Listings he considered in the process, and state reasons why Petitioner's claim did not meet or equal the contemplated Listing."); Santiago v. Barnhart, 278 F.Supp.2d 1049, 1058 (N.D. Cal. 2003) ("There was no discussion on how Santiago's alleged impairments failed to meet the listed impairments identified by Santiago.").

Although the ALJ's decision attempts to characterize the analysis of Listing 1.02 as one involving the absence of evidence, the record does not support that characterization.  In this regard, a December 7, 2012 MRI of plaintiff's left knee noted cartilage loss and joint space loss. (Tr. at 302-03.)  On June 16, 2014, Dr. Lee Tocchi noted that an x-ray of plaintiff's left knee "showed complete collapse of the medial joint space and some osteophytes, changes to the bone." (Tr. at 525.)  On August 27, 2014, Dr. Tocchi noted that plaintiff had "patellofemoral as well as bone on bone medial joint space cartilage loss with exposed 50-cent piece size of exposed bone on his tibia and the medial femoral condyle." (Id. at 523.)  An October 17, 2014 record from an office visit revealed that plaintiff required "a total knee replacement."  (Id. at 567.)

The record also revealed that plaintiff experienced joint pain and stiffness with signs of limitation of motion.  (Id. at 54, 463, 539, 543.)  Moreover, the record revealed instances in which plaintiff required crutches to ambulate.  (Id. at 324, 357, 435, 527, 567.)  And the ALJ determined that plaintiff's residual functional capacity included a limitation to "a walking surface that is generally even and/or free of any irregularities, such as indoor office work."  (Id. at 18.)

Although the ALJ may have found evidence in the record to discount or refute the evidence addressed above, the ALJ's decision failed to even discuss this evidence at step three of the sequential evaluation.  Accordingly, the court finds that plaintiff is entitled to summary judgment with respect to the claim that the ALJ erred at step three of the sequential evaluation.

II.     Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.

2009)).

A.   Totally Temporarily Disabled

Plaintiff argues that the ALJ's treatment of the medical opinions finding plaintiff temporarily disabled was erroneous.  (Pl.'s MSJ (ECF No. 18) at 16-17, 23-24.)  In this regard, from December 2011 through October 2014, plaintiff's treating physician, Dr. Hari Goyal, opined that plaintiff was temporarily and totally disabled.  (Tr. at 24-25, 435, 567.)  And in December of 2012, Dr. Michael Sommer, an examining physician, also opined that plaintiff was totally temporarily disabled.  (Id. at 316.)   The ALJ afforded these opinions "little weight," stating:

> …the term "totally temporarily disabled" actually refers to the inability to perform past work, as opposed to any work in the national economy.  As such, it is not clear that the doctors were familiar with the definition of "disability contained" in the Social Security Act and regulations.

(Id. at 25.)

An ALJ, however, may not reject the opinion of a treating or examining physician simply because the opinion does not use the equivalent Social Security disability terminology.  "Instead, the ALJ must evaluate medical opinions couched in [such] terminology just as he or she would evaluate any other medical opinion."  Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002); see also Perez v. Astrue, 831 F.Supp.2d 1168, 1177 (C.D. Cal. 2011) ("An ALJ may not ignore such opinions but must translate them into corresponding Social Security terminology.").

Accordingly, the court finds that plaintiff is entitled to summary judgment with respect to this claim.

B.   Dr. Goyal's Medical Source Statement

Plaintiff also argues that the ALJ rejected the opinion of Dr. Goyal, a treating physician, for reasons that "are neither clear and convincing nor legitimate," and that "lack substantial evidence to support them."  (Pl.'s MSJ (ECF No. 18) at 18.)  The court agrees.  In this regard, Dr. Goyal also provided two Medical Source Statement-Physical opinions.  (Tr. at 547-48, 658-59.)  The ALJ's decision discussed these opinions, stating:

> In August 2014, treating physician, H. Goyal, M.D., rendered a physical assessment, wherein he opined as follows:  the claimant is able to lift/carry less than 10 pounds occasionally.  The claimant is

9

ability to stand and/or walk less than 2 hours and sit less than 6 hours in an 8-hour workday. The claimant needs to elevate his legs while sitting. The claimant is unable to sustain work activity for an 8-hour workday or a 40-hour workweek. The claimant is unable to climb, balance, stoop, knee (sic), crouch or crawl. The claimant may occasionally reach and frequently handle or finger with the bilateral upper extremities. The claimant has environmental limitations to temperature extremes, chemicals and work hazards. The claimant will need to lie down 3-4 times per day. In August 2014, treating physician, Dr. Goyal corroborated his assessment, and added the following limitations: the claimant needs to elevate his legs 6-7 times if needed.

(Tr. at 27.)

The ALJ did not reject Dr. Goyal's opinion in its entirety, but instead elected to afford "many of those opinions little weight." (Id.) The ALJ went on to criticize Dr. Goyal's use of "ambiguous" findings, "such as the claimant being required to elevate his legs 'if needed.'" (Id.) The court agrees that the phrase "if needed" is ambiguous. The ALJ decision, however, engages in similar ambiguity by stating that "many of" Dr. Goyal's opinions were afforded little weight. That implies that some of Dr. Goyal's opinions may have been afforded something more than little weight.

Moreover, while the ALJ's decision did discuss why the ALJ rejected Dr. Goyal's assessed limitations with respect to plaintiff's inability to balance, need to elevate his legs, restriction from exposure to chemicals, and ability to lift less than 10 pounds, the ALJ never specifically addressed Dr. Goyal's opinion that plaintiff would be unable to sustain work activity for an 8-hour workday or a 40-hour workweek. (Id.) As noted above, even where a treating physician's opinion has been controverted, that opinion may only be rejected for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31.

The ALJ's decision did offer a general critique of Dr. Goyal's opinion. In this regard, the ALJ found that "Dr. Goyal's medical opinion [was] extreme, and out of proportion to treatment reports, objective evidence and the record as a whole." (Tr. at 27.) The ALJ, however, offered neither further explanation, nor even a citation to evidence, in support of this finding.

To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of

10

> specificity . . . required, even when the objective factors are listed
> seriatim.  The ALJ must do more than offer his conclusions.  He
> must set forth his own interpretations and explain why they, rather
> than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

For the reasons stated above, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons supported by substantial evidence in the record for rejecting Dr. Goyal's opinion.

C.     Dr. Lee Tocchi

On August 27, 2014, Dr. Tocchi, a treating physician, provided a medical opinion.  (Tr. at 523-24.)  The ALJ's decision discussed Dr. Tocchi's opinion, stating:

> In August 2014, treating physician, Dr. Tocchi rendered a physical
> assessment, wherein he opined as follows: the claimant is able to
> lift/carry 5-10 pounds on a consistent basis and up to 20 pounds on
> an intermittent basis.  The claimant is able to stand or walk 1-2
> hours in an 8-hour workday without significant problems.  The
> claimant requires use of his brace.  He has some limitations for
> sitting in one position and is not a "great candidate for a completely
> sedentary work job."  The claimant does not need to elevate legs
> above knee level.  It is unlikely the claimant can sustain work
> activity for an 8-hour workday or a 40-hour workweek.  The
> claimant is limited in climbing and balancing.  He has some
> difficulty with cold temperatures.  He is unable to stoop, kneel,
> crouch or crawl.  He has some periods he needs to be off of his feet.
> This assessment is given some weight as it is largely consistent
> with the above residual functional capacity.  Specifically, Dr.
> Tocchi finds the claimant capable of lifting/carrying 10 pounds
> frequently and 20 pounds occasionally (or intermittently).  He finds
> the claimant capable of walking up to 2 hours in an 8-hour day and
> fails to provide any specific sitting limitations.  The undersigned
> has also adopted his postural limitations.  These findings are
> consistent with other medical opinions, objective evidence and the
> record as a whole.  It is emphasized that, as a treating physician, Dr.
> Tocchi based his findings on multiple examinations and a
> longitudinal understanding of the claimant's condition.
>
> On the other hand, Dr. Tocchi indicated the claimant is not a "great
> candidate for a completely sedentary work job."  He also reported it

is unlikely the claimant can sustain work activity for an 8-hour workday or a 40-hour workweek. These findings are given little weight. First, the findings are ambiguous insomuch as they do not provide concrete statements. For example, a finding that the claimant "is not a great candidate" from (sic) sedentary work is much different than a finding that he is precluded from such work. Moreover, a finding that the claimant is unlikely to sustain full-time employment is different than a finding he is unable to perform such work. The undersigned finds these ambiguous statements are not sufficiently explained or supported by medical evidence.

Lastly, Dr. Tocchi found the claimant has some difficulty with cold temperatures. This finding is also given little weight as it is not supported by medical evidence of record. In fact, treatment reports fail to document any significant complaints related thereto.

(Id. at 26-27.)

Plaintiff argues that "[t]here is nothing ambiguous" about Dr. Tocchi's opinion. (Pl.'s MSJ (ECF No. 18) at 21.) The court, however, finds the ALJ's reasoning—if not persuasive— permissible. That one who is "not a great candidate" for sedentary work may nonetheless be capable of performing sedentary work is a valid interpretation. Dr. Tocchi, however, did not simply opine that plaintiff was not a great candidate for sedentary work.

Instead, Dr. Tocchi stated that plaintiff "has to be able to vary positions throughout the day, so he is not a great candidate for a completely sedentary work job either." (Tr. at 524.) It appears Dr. Tocchi was opining that plaintiff required a "sit/stand option." See Buckner–Larkin v. Astrue, 450 Fed. Appx. 626, 627 (9th Cir. 2011) (noting that a sit/stand option can reasonably be interpreted as sitting or standing at will based on the record). Regardless, the ALJ's decision neither provided a specific and legitimate reason for rejecting Dr. Toochi's opinion that plaintiff would need to vary positions throughout the day nor accounted for that limitation in the residual functional capacity determination.

Moreover, the ALJ's decision asserted that it "adopted [Dr. Tocchi's] postural limitations." (Tr. at 26.) According to the ALJ's own decision, Dr. Tocchi opined that plaintiff was "unable to stoop, kneel, crouch or crawl." (Id.) The ALJ, however, found that plaintiff had the residual functional capacity to "stoop and/or crouch occasionally." (Id. at 18.)

For the reasons stated above, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons supported by substantial evidence in the record

12

for rejecting Dr. Tocchi's opinion. Accordingly, plaintiff is entitled to summary judgment on plaintiff's claim that the ALJ's treatment of the medical opinion evidence constituted error.

III.     Lay Testimony

Plaintiff also argues that the ALJ's treatment of plaintiff's testimony and the testimony of plaintiff's son constituted error. (Pl.'s MSJ (ECF No. 18) at 24-30.)

A.     Plaintiff's Testimony

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

13

testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were "not entirely credible for the reasons explained in" the ALJ's decision. (Tr. at 23.)

The primary reason offered by the ALJ for rejecting plaintiff's testimony was that the ALJ found that plaintiff "provided inconsistent information." (Tr. at 23.) In this regard, the ALJ stated:

> At the hearing, the claimant testified that he is restricted by constant pain. The claimant indicated he spends his day changing positions and reclining in a chair. The claimant reported he is able to do only limited household chores, such as putting dishes away. As far as yard work, the claimant said he can "maybe" cut a couple of roses. The claimant indicated he is able to "occasionally" go to the grocery store with his fiancé and "sometimes" make a full circuit of the store. The claimant explained he is able to shop for a maximum of 20 minutes, but many times stays in the car. Conversely, only three months prior to the hearing, the claimant indicated to treating physician, Dr. Tocchi that he had "fairly decent relief of knee pain" with his brace. To this end, Dr. Tocchi reported the claimant was capable of manually turning on "sprinkler stations for "a couple" of hours with intermittent breaks. He stated the claimant was able to shop at up to two stores, standing and walking 1-2 hours, before he required a break. Additional reports documented the claimant performing yard work for a few hours and having no difficulty shopping in stores (except limited by weight he lifted.)

(Tr. at 23) (emphasis in original).

The ALJ's characterization of the evidence, however, again lacks for context. In this regard, in support of this argument the ALJ cited to an August 27, 2014 medical record from Dr. Tocchi. (Id.) Therein, Dr. Tocchi stated that after plaintiff began using "an unloader brace" plaintiff experienced "fairly decent relief" in that plaintiff was "able to walk and stand with less

14

constant pain in his knee." (Id. at 523.) There is nothing inconsistent about plaintiff experiencing

lessened, but nonetheless constant, pain.

That medical record goes on to state:

> He lives out in the hills and has 17 sprinkler stations he has to turn on manually. He can walk to one stations, turn it on and walk back, then sit in his chair. By the end of the 17 sprinklers a couple of hours later, he is having some pain and aching. He can do one, maybe two stores of shopping before he has to sit and elevate his leg because of pain and swelling.

(Id.)

The ALJ's argument also cited to an April 7, 2014 medical record from Dr. Tocchi.

Therein, Dr. Tocchi recounts that plaintiff "did some prolonged walking and standing, I think

yard work at home for a few hours." (Tr. at 529.) Plaintiff experienced "significant pain after

that." (Id.)

The evidence cited by the ALJ and discussed above is consistent with plaintiff's

testimony. The ALJ's decision also asserted that plaintiff "provided inconsistent information

regarding symptoms and limitations," supported by a repeated reference to Dr. Tocchi's statement

that plaintiff experienced "'fairly decent relief of knee pain' with his brace." (Id. at 24.) As

found previously, this is neither a complete representation of Dr. Tocchi's statement nor a clear

and convincing reason for rejecting plaintiff's testimony.

The ALJ went on to reference "another account . . . the claimant stated he is able to sit for

60 minutes and walk for 20 minutes," and a statement to "Dr. Goyal that he only used a cane on

an 'as needed' basis." (Id.) The medical record cited by the ALJ with respect to Dr. Goyal does

reflect that plaintiff was "[u]sing a cane as needed." (Id. at 646.) However, a few sentences prior

reads: "Cannot bear weight or walk without crutches." (Id.)

The next reason provided by the ALJ was that plaintiff's "allegedly disabling

impairment(s) was present at the same level of severity prior to the alleged onset date." (Id. at

24.) In this regard, the ALJ asserts that plaintiff "had surgery for a 2008 left knee injury, after

which he had 'little relief of pain' in the left knee and recurrent pain in the right knee." (Id.)

According to the ALJ, the "fact that the impairment(s) did not prevent the claimant from working

15

previously strongly suggests that it would not currently prevent work." (Id.)  By that logic, however, it would be presumed that anyone with a degenerative disease who once worked could currently work.

The final reason offered by the ALJ for rejecting plaintiff's testimony was "claimant's generally unpersuasive appearance and demeanor while testifying at the hearing." (Id.)  In this regard, the ALJ noted that plaintiff was able to sit in a chair at the hearing for 40 minutes.  (Id.)  However, an ALJ may not "base a finding of no credibility and no disability solely upon his observation of plaintiff's demeanor at the administrative hearing." Lewis v. Bowen, 675 F.Supp. 1205, 1209 (C.D. Cal. 1987); see also Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) ("The ALJ's reliance on his personal observations of Perminter at the hearing has been condemned as 'sit and squirm' jurisprudence.").

Accordingly, the ALJ failed to offer clear and convincing reasons for rejecting plaintiff's testimony.

B.      Plaintiff's Son's Testimony

The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ.  Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  Persons who see the claimant on a daily basis are competent to testify as to their observations.  Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony.  Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289.  Moreover, "the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)).  However, the ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  See Valentine, 574 F.3d at 694 (approving

16

rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ's decision considered the Function Report—Adult—Third Party form completed by plaintiff's son. (Tr. at 24.) The ALJ afforded the statement "some weight regarding daily activities performed by the claimant," and noted that the form acknowledged that plaintiff remained capable of performing certain daily activities. (Id.)

It is important to note that

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

The ALJ, however, found the statement's opinions with respect to plaintiff's physical limitations due to injury and pain "less persuasive." (Tr. at 24.) In this regard, the ALJ found the opinions "inconsistent with medical opinions of record, the objective findings and the record," and lacking "substantial support from the other evidence of record." (Id.)

The ALJ's decision, however, does not cite to any evidence in support or state with any specificity how the third party statement was inconsistent or unsupported.[3] In this regard, the ALJ failed to provide germane and specific reasons for rejecting the third party testimony.

For the reasons stated above, the court finds that plaintiff is entitled to summary judgment on plaintiff's claim that the ALJ's treatment of the subjective testimony constituted error.

IV.    Residual Functional Capacity

Plaintiff argues that ALJ's residual functional capacity determination was erroneous. (Pl.'s MSJ (ECF No. 18) at 30-32.) A claimant's Residual Functional Capacity ("RFC") is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20

---

[3] Given the errors identified above, it is quite possible that the ALJ rejected the third party testimony based on the erroneous treatment of the medical opinion evidence and/or plaintiff's subjective testimony.

C.F.R. § 416.945(1); see also Cooper v. Sullivan, 880 F.2d 1152, n.5 (9th Cir. 1989) ("A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations."). In conducting an RFC assessment, the ALJ must consider the combined effects of an applicant's medically determinable impairments on the applicant's ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine, 574 F.3d at 690. The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ's RFC determination is erroneous in three respects. First, as noted above, the ALJ improperly rejected the opinions of two treating physicians, as well as the subjective testimony provided by plaintiff and plaintiff's son. Accordingly, the ALJ's RFC determination failed to take into account all of plaintiff's limitations.

Second, the ALJ determined that plaintiff had the residual functional capacity to "lift and carry up to 10 pounds using his free hand as he uses the cane in the other." (Tr. at 18.) That finding appears to be without any support in the record.

Finally, the ALJ found that plaintiff was moderately limited in maintaining concentration, persistence, and pace. (Id. at 17.) Where an ALJ accepts that the medical evidence has established that the claimant is moderately limited in maintaining concentration, persistence and pace, the ALJ must include that limitation in RFC determination. See Lubin v. Commissioner of Social Sec. Admin., 507 Fed.Appx. 709, 712 (9th Cir. 2013) ("The ALJ must include all restrictions in the residual functional capacity determination and the hypothetical question posed to the vocational expert, including moderate limitations in concentration, persistence, or pace."); Stewart v. Astrue, 561 F.3d 679, 684-85 (7th Cir. 2009) ("The Commissioner asserts that the ALJ accounted for Stewart's limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the

general public.  We have rejected the very same contention before.").

Accordingly, for the reasons stated above, plaintiff is also entitled to summary judgment on the claim that the ALJ's RFC determination constituted error.

V.    Incomplete Hypothetical Question

Plaintiff also argues that the ALJ's hypothetical question to the Vocational Expert ("VE") failed to account for all of plaintiff's limitations.  (Pl.'s MSJ (ECF No. 18) at 33-35.)  At step five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (alterations in original)).  "To aid in making this determination, the ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite his or her limitations." Gutierrez v. Colvin, 844 F.3d 804, 806-07 (9th Cir. 2016).

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, ("RFC"), must account for all of the limitations and restrictions of the particular claimant.  Bray, 554 F.3d at 1228.

"If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").  Moreover, "[w]hen there is an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT")—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846.

////

19

Here, the ALJ's hypothetical question to the VE was inadequate for the same reasons addressed in plaintiff's prior claim.  In this regard the ALJ's hypothetical question failed to account for all of plaintiff's limitations, asked the VE to assume that plaintiff could engage in activity unsupported by evidence, and failed to account for plaintiff's moderate limitations in maintaining concentration, persistence and pace.  See Brink v. Commissioner of Social Sec. Admin., 599 Fed.Appx. 657, 658 (9th Cir. 2015) ("Brink II") ("we reasoned that the ALJ failed to capture Brink's functional limitations resulting from his moderate impairments in concentration, persistence, or pace when the ALJ's hypothetical to the vocational expert stated only that Brink could perform simple, repetitive tasks"); Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1181 (11th Cir. 2011) ("In this case, the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical.  Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert.").

Moreover,

> SSR 00-4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles]."  SSR 00-4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.

Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (alterations in original); see also Zavalin, 778 F.3d at 846 ("The ALJ must ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination.").

Here, the ALJ relied on the VE's testimony that plaintiff's residual functional capacity allowed plaintiff to perform the jobs of Call-Out Operator, Charge Account Clerk, and Document

////

Preparer. (Tr. at 29, 75.) Those jobs, however, require a reasoning development level 3.[4] See DICTO 237.367-014 CALL-OUT OPERATOR; DICOT 205.367-014 CHARGE-ACCOUNT CLERK; DICOT 249.587-018 DOCUMENT PREPARER.

"[T]here is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." Zavalin, 778 F.3d at 847; see also Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017) ("We recently held that a limitation to simple, routine, or repetitive work is inconsistent with Reasoning Level 3."); Rounds v. Commissioner Social Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015) ("There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'"); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (limitation to simple and routine work "seems inconsistent with the demands of level-three reasoning"); Tich Pham v. Astrue, 695 F.Supp.2d 1027, n.7 1032 (C.D. Cal. 2010) (level 3 reasoning "greater than the reasoning required for simple repetitive tasks").[5]

Accordingly, for the reasons stated above, the court finds that plaintiff is also entitled to summary judgment on the claim that the ALJ's hypothetical question to the VE was incomplete.

CONCLUSION

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

---

[4] Level 3 reasoning requires a claimant to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702.

[5] Defendant cites Ranstron v. Colvin, 622 Fed.Appx. 687 (9th Cir. 2015), in support of the argument that the jobs identified by the VE were "consistent with simple and repetitive work." (Def.'s MSJ (ECF No. 26) at 30.) In Ranstrom, however, the jobs identified by the VE "correspond[ed] to . . . Reasoning Level 2." (Id. at 688.)

(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record consists of over 600 pages of documents, the opinions of multiple treating and examining physicians, plaintiff's testimony before the ALJ, a third-party statement, and the testimony of a VE. In this regard, the court finds that the first prong of the credit-as-true rule is met. See Trevizo, 871 F.3d at 683 (finding first prong met where "the record is extensive").

Moreover, the second and third prongs of the credit-as-true rule are also satisfied. The ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of two treating physicians, plaintiff's testimony, and the lay witness testimony. If credit as true, that evidence establishes the plaintiff is disabled.

In particular, as the ALJ's decision acknowledged, Dr. Goyal opined that plaintiff was "unable to sustain work activity for an 8-hour workday or a 40-hour workweek." (Tr. at 27.) That opinion was consistent with the opinion of Dr. Tocchi, who also opined that it was "unlikely" that plaintiff could "sustain work activity for an 8-hour workday or a 40-hour workweek," as well as with plaintiff's testimony. (Id. at 19, 26.) An RFC assessment must be based on the claimant's ability to work on a regular and continuing basis. "A 'regular and

continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 26) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: March 21, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\durso2290.ord2

23